UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED: June 11, 2020
```

| | |
|---|---|
| 335-7 LLC, FGP 309 LLC, 226 LLC, 431 HOLDING LLC, and 699 VENTURE CORP., | |
| Plaintiffs, | |
| – against – | **OPINION AND ORDER** |
| CITY OF NEW YORK, NEW YORK CITY RENT GUIDELINES BOARD, and RUTHANNE VISNAUSKAS, *in her official capacity as commissioner of the New York State Division of Homes and Community Renewal*, | 20 Civ. 1053 (ER) |
| Defendants. | |
| – and – | |
| NEW YORK TENANTS & NEIGHBORS, and COMMUNITY VOICES HEARD, | |
| Proposed Defendant-Intervenors. | |

RAMOS, D.J.:

Plaintiffs are five owners and landlords of residential apartment buildings in the City of New York (the "Landlord Plaintiffs").  They brought this action against the City of New York, the New York City Rent Guidelines Board (the "City Defendants"), and RuthAnne Visnauskas in her official capacity as commissioner of the New York State Division of Homes and Community Renewal (the "State Defendant"), challenging the constitutionality of the New York State and New York City Rent Stabilization Laws[1] ("RSL"), including the 2019 amendments thereto.

---

[1] According to the complaint, the RSL consist of various laws that govern rent stabilization in New York City codified in N.Y. UNCONSOL. LAW TIT. 23 § 8621 (McKinney) and NEW YORK CITY ADMIN. CODE § 26-501 *et seq.*, New York State rent stabilization regulations in N.Y. COMP. CODES R. & REGS. TIT. 9 § 2520 *et seq.*, implementing policies of the State and City Defendants, the Housing Stability and Tenant Protection Act of 2019, and all related laws, codes, and regulations.  *See generally* Doc. 1.

Before the Court now is a motion to intervene permissively pursuant to Federal Rule of Civil Procedure 24(b), brought by two tenant advocacy groups—New York Tenants & Neighbors and Community Voices Heard ("Proposed Intervenors").[2]  Mot. to Intervene, Doc. 48.  The City and State Defendants have consented to this intervention.  The Landlord Plaintiffs, however, oppose the motion.  Doc. 51.  For the reasons set forth below, the motion to intervene is GRANTED.

## I.  BACKGROUND

### A.  Factual Background[3]

This is one of five actions filed in the Southern and Eastern Districts of New York in which building owners and landlords seek to challenge the constitutionality of New York's RSL.[4]  Proposed Intervenors have already intervened in two of the five cases.[5]  *See Cmty. Hous. Improvement Prog. V. City of N.Y.*, E.D.N.Y. No. 19 Civ. 4087 (EK) (RLM); *74 Pinehurst LLC v. State of N.Y.*, E.D.N.Y. No. 19 Civ. 6447 (EK).  In the instant action, the Landlord Plaintiffs, asserting claims under the Fifth and Fourteenth Amendments as well as 42 U.S.C. § 1983, allege that the RSL, both facially and as applied, effects a physical, regulatory, and confiscatory taking

---

[2] The parties in this action are also in the process of briefing motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which are not at issue in this opinion.

[3] The following facts are largely drawn from Proposed Intervenors' non-conclusory allegations, which the Court accepts as true for purposes of the instant motion.  *See Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.d. 348, 352 (S.D.N.Y. 2009) (internal citations and quotation marks omitted); *see also Herman v. New York Metro Area Postal Union*, 97 Civ. 6839 (KMW), 1998 WL 214787, at *1 (S.D.N.Y. Apr. 30, 1998) ("The applicants' well-pleaded allegations must be accepted as true for purposes of considering a motion to intervene, with no determination made as to the merits of the issues in dispute." (citation omitted)).

[4] All five complaints allege that New York's RSL, as amended in 2019, effect both a physical and regulatory taking of property without just compensation and violates landlords' due process rights.  *See Cmty. Hous. Improvement Prog. V. City of N.Y.*, E.D.N.Y. No. 19 Civ. 4087 (EK) (RLM); *74 Pinehurst LLC v. State of N.Y.*, E.D.N.Y. No. 19 Civ. 6447 (EK); *Building and Realty Inst. of Westchester v. State of N.Y.*, S.D.N.Y. No. 19 Civ. 11285 (KMK); *G-Max Mgmt., Inc. v. State of N.Y.*, S.D.N.Y. No. 20 Civ. 634 (KMK).

[5] In both cases, the motions to intervene were granted on consent.

of property not for public use and without just compensation, and violates their due process rights.  *See generally* Doc. 1.

Before 1969, the New York City Council found that many landlords were "demanding exorbitant and unconscionable rent increases as a result of the housing shortage" then existing in the City, and that as a result, tenants suffered "severe hardship" and long-time city residents were uprooted from their communities.  *See* Mem. of Law in Supp. of Mot. to Intervene ("Supp. Mem."), Doc. 50 at 2 (citing *Gramercy Spire Tenants' Ass'n v. Harris*, 446 F. Supp. 814, 825 (S.D.N.Y. 1977)).  In 1969, New York State adopted the Rent Stabilization Law of 1969, limiting rent increases for regulated units while providing tenants ("Rent-regulated Tenants") the option to renew rent stabilized leases.  *Id.*  Over the last fifty years, the City and State have renewed and modified the RSL several times.  *Id.*  Notwithstanding those RSL, in 2018, over 188,000 New Yorkers faced eviction because they could not afford their rent, and over three fourths of low-income New Yorkers spend thirty percent of their income on rent, with some indigent tenants spending over fifty percent.  *Id.* at 3.  Furthermore, the homeless population in the New York City came to exceed 78,000 in 2019, including over 43,000 homeless people in families with children.[6]  *Id* at 2.

On June 14, 2019, New York State enacted the Housing Stability and Tenant Protection Act of 2019, as a response to an ongoing housing shortage crisis.  *Id.* at 3.  Among other things, the Act fine-tuned how rents can be increased, and how units can be deregulated.  *Id.*  The Act and other laws, codes, and regulations that govern rent stabilization in New York City, along with implementing policies of the New York City Rent Guidelines Board and the New York

---

[6] According to Proposed Intervenors, the housing crisis worsened in the 1990s due to "expanded paths to rent increases and deregulation" by the New York State legislature.  *Id.*

State Division of Housing and Community Renewal, are the relevant statutory scheme at issue in the instant action. *See generally* Doc. 1.

### B. Procedural History

The Landlord Plaintiffs commenced the instant action on February 6, 2020.  Doc. 1.  On March 24, 2020, Proposed Intervenors advised this Court that they intended to move to intervene and requested leave to do so.  *See* Doc. 43.  On April 3, 2020, Proposed Intervenors moved to intervene.  Doc. 48.  On May 24, 2020, another group of nine tenant advocacy organizations and associations applied for leave to file an amicus brief, Doc. 70, which the Court granted, Doc. 71. On June 2, 2020, the owner of 312 West 93rd Street, a single room occupancy building in New York City, requested leave to move to intervene as of right or permissively as a plaintiff.[7]  Doc. 76.

### C. Proposed Intervenors

Proposed Intervenors are two prominent tenant advocacy groups in New York, both of which have organized and lobbied for greater protections for tenants generally—and Rent-regulated Tenants in particular—for decades.[8]  Supp. Mem. at 4.  Both groups were on the steering committee of the Upstate Downstate Housing Alliance, which led the lobbying efforts for the Housing Stability and Tenant Protection Act of 2019.  *Id*.  In addition to its annual efforts to increase tenant testimony before the New York City Rent Guidelines Board, New York Tenants & Neighbors' Executive Director and several of its members testified before the New York City Council in 2018 when the Council was considering whether to continue rent

---

[7] On June 4, 2020, the Court granted the owner of 312 West 93rd Street leave to file a motion to intervene, whose motion papers are due June 26, 2020.  That motion is thus not at issue in this opinion.

[8] New York State Tenants & Neighbors was founded in 1974, while Community Voices Heard was founded in 1994.

4

stabilization.  *Id*. at 4–5.  Lastly, both groups have numerous members who are Rent-regulated

Tenants.  *Id*. at 5.  According to Proposed Intervenors, they have first-hand experience with the

problems that the Housing Stability and Tenant Protection Act of 2019 addressed and rely on

RSL to continue living in and contributing to their communities.  *Id*.

## II.   DISCUSSION

Federal Rule of Civil Procedure 24(b) provides for permissive intervention "[u]pon

timely application…when an applicant's claim or defense and the main actions have a question

of law or fact in common."  Fed. R. Civ. P. 24(b)(1)(B).[9]

A district court's discretion under Rule 24(b) is "broad."  *Restor-A-Dent Dental Labs.,

Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 876 (2d Cir. 1984) (citing *S.E.C. v. Everest

Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972)).  In exercising its discretion, the district court

must consider whether the intervention will unduly delay or prejudice the adjudication of the

original parties' rights.  Fed. R. Civ. P. 24(b)(3); *see also United States v. Postal Service v.

Brennan*, 579 F.2d 188, 191 (2d Cir. 1978).  Additional relevant factors include "the nature and

extent of the intervenors' interests," the extent to which those interests are "adequately

represented by other parties," and "whether parties seeking intervention will significantly

contribute to full development of the underlying factual issues in the suit and to the just and

equitable adjudication of the legal questions presented."  *See Grewal v. Cueno*, No. 13 Civ. 6836

(RA) (HBP), 2014 WL 2095166, at *3 (S.D.N.Y. May 20, 2014) (citing *H.L. Hayden Co. of N.Y.

v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (internal quotation marks omitted)).

Proposed Intervenors contend that their motion should be granted because:  (1) any

judgment rendered in this action will have a direct impact on both themselves and their

---

[9] As a preliminary matter, the Landlord Plaintiffs do not contest that the instant motion to intervene was timely filed.

members; and (2) that they, having been intimately involved in efforts in connection with the RSL, will offer not only a unique, personal and highly relevant factual perspective to the laws at issue, its development, and its impact, but also specialized expertise and substantial familiarity with the legal issues under review.  In response, the Landlord Plaintiffs do not dispute that Proposed Intervenors are the intended beneficiaries of the RSL, but argue that their interests are already being adequately represented by the named defendants in this action, and permitting intervention here will prejudice plaintiffs' interests.  Alternatively, the Landlord Plaintiffs argue that affording Proposed Intervenors *amicus curiae* status would provide an adequate substitute for intervention.

Here, the Court finds that Proposed Intervenors have the better of the argument.  To begin, Rule 24(b)(1)(B) is satisfied here because there is no dispute that Proposed Intervenors' defenses share the same fundamental question of law with the main suit:  the constitutionality of the RSL as amended in 2019.[10]  *See* Fed. R. Civ. P. 24(b)(1)(B); *see also Miller v. Silbermann*, 832 F. Supp. 663, 674 (S.D.N.Y. 1993) (granting permissive intervention to tenants whose "defense raises the same legal questions as the defense of the named defendants—all claims concern the constitutionality of the Housing Court's policies and procedures").  Furthermore, Proposed Intervenors, grassroots organizations that closely serve tenants directly impacted by the RSL and having been intimately involved in efforts in connection with the RSL for decades, will undoubtedly contribute "to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  *Grewal*, 2014 WL 2095166, at

---

[10] Here, Proposed Intervenors need not separately demonstrate Article III standing because they seek no relief "that is different from that which is sought by a party with standing."  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017).  In any event, Proposed Intervenors would have representational standing by virtue of their numerous members—Rent-regulated Tenants—whose interests would be directly affected should the Landlord Plaintiffs succeed; the interests that they seek to protect are germane to Proposed Intervenors' purpose; and participation of individual members is not required.  *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. V. Brock*, 477 U.S. 274, 282 (1986).

*3 (internal quotation marks and citation omitted).  Courts have often specifically recognized the benefits of intervention by tenant groups whose viewpoint and knowledge of the underlying circumstances would assist the court during the course of litigation.  *See Miller*, 832 F. Supp. at 674; *see also United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 419 (S.D.N.Y. 2018).  Indeed, Proposed Intervenors are already providing such assistance in the two RSL actions filed in the United States District Court for the Eastern District of New York.  Accordingly, while affording Proposed Intervenors *amicus curiae* status would allow them to provide the Court with their legal analysis, the Court finds that, on balance, permitting them to intervene will better assist the Court in resolving the issues raised by the complaint.

Moreover, there is no harm to the Landlord Plaintiffs' interests if intervention is granted at this early stage in the litigation.  The instant motion to intervene was filed promptly, and Proposed Intervenors will be subject to the same briefing schedule regarding the defendants' pending motions to dismiss.  In any event, the Landlord Plaintiffs cannot claim an appreciable burden from having to respond to Proposed Intervenors' legal arguments, whose submissions as *amicus curiae* the Court otherwise undoubtedly would have received.  Furthermore, the Landlord Plaintiffs' concern that because they also challenge the RSL as applied, permitting intervention would allow the Proposed Intervenors to unnecessarily seek discovery into their individual businesses and finances, is both premature and unfounded.  In the event that their claims do survive the motions to dismiss, it is unclear how their individual businesses and finances would only be relevant to, and thus sought by, Proposed Intervenors but not the named defendants.  To the extent that their concern is directed at the possibility of duplicative requests for discovery, that concern can be addressed by this Court's authority to supervise discovery.

Next, the Landlord Plaintiffs' contention that intervention should be denied on the basis that Proposed Intervenors' interests are already adequately represented in this action is unpersuasive.  While failure to show inadequate representation may warrant denial of intervention of right, "a finding that party representation be inadequate" is not required to for a district court to grant permissive intervention.  *See New York v. United States Dep't of Health and Human Servs.*, No. 19 Civ. 4676 (PAE), No. 19 Civ. 5433 (PAE), 19 Civ. 5435 (PAE), 2019 WL 3531960 at *6 (S.D.N.Y. Aug. 2, 2019) (internal citations omitted); *see also N.Y.C. Hous. Auth.*, 326 F.R.D. at 418 (adequacy of party representation is "clearly a minor factor at most") (quoting *Oenida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17 Civ. 957 (ADS) (AKT), 2017 WL 6459464, at *13 (E.D.N.Y. Dec. 15, 2017)).  Instead, courts within this Circuit have held that "while existing adequate representation may militate against allowing permissive intervention, such intervention may still be appropriate if the addition of the intervenors will assist in the just and equitable adjudication of any of the issues between the parties."  *See N.Y.C. Hous. Auth.*, 326 F.R.D. at 418 (internal quotation marks and citations omitted); *see also Oneida Grp.*, 2017 WL 6459464, at *13 (collecting cases finding permissive intervention warranted even where party representation was found adequate).

Lastly, the Landlord Plaintiffs' concern that permitting intervention could open the floodgates to potential intervenors with the same claim to intervention is unfounded.[11]  This action involving the RSL—the subject of voluminous editorials and news articles—has been pending for over four months now.  Additionally, the parties are already well into the process of

---

[11] To date, there has been only one other application, apart from the instant motion, filed by various tenant advocacy organizations.  Doc. 71.  That application, filed on May 23, 2020, only sought amicus curiae status, which the Court granted.  Doc. 72.

briefing potentially dispositive motions to dismiss.  Therefore, any additional application to intervene may well be untimely.

## III.    CONCLUSION

For the aforementioned reasons, Proposed Intervenors' motion to intervene is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 48. It is SO ORDERED.

Dated:    June 11, 2020
          New York, New York

_____
Edgardo Ramos, U.S.D.J.

9